FLICKER, GARELICK & ASSOCIATES, LLP
45 Broadway
New York, New York 10006
(212) 319-5240
Attorneys for Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                         :

VINCENT CATANZARO,           :

                            :

            Plaintiff,        :      11 Civ. 4903 (RRM)(VVP)

                            :

            v.                :

                            :

NORTHEAST REMSCO CONSTRUCTION, :
INC.,                           

                            :

            Defendant.      :

                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

FLICKER, GARELICK & ASSOCIATES, LLP
Attorneys for Defendant
45 Broadway
New York, New York 10006
(212) 319-5240

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    Catanzaro is Not a Jones Act Seaman and Therefore
        His Lawsuit Must Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.    Catanzaro, a Member of the Laborer's Union,
            Did Not Derive His Livelihood From
            Sea-Based Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

        B.    Catanzaro Meets the Situs and Status
            Test of the LHWCA and is Therefore
            Covered Under the Exclusive Remedy
            of the LHWCA, as the Jones Act and
            the LHWCA are Mutually Exclusive
            Compensation Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            i.    Catanzaro is a Covered Employee
                Under the LHWCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

            ii.    The LHWCA is Catanzaro's
                Exclusive Remedy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

    II.    To the Extent that the Pallet Was Damaged,
        The Damaged Pallet Did Not Render the Vessel
        Unseaworthy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

## TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Barlas v. United States*,
279 F. Supp. 2d 201 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bell v. Nihonkai Kisen K.K. Tokyo*,
204 F. Supp. 230, 233 (D.C. Or. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Boy Scouts of America v. Graham*,
86 F.3d 861 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Butcher v. Superior Offshore Int'l, Inc.*,
357 Fed. Appx. 619 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 7

*Carabellese v. Naviera Aznar, S.A.*,
285 F.2d 355 (2d Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Casser v. McAllister Towing & Transp. Co.*,
No. 10-1554, 2010 U.S. Dist. LEXIS 130462 (S.D.N.Y. Dec. 6, 2010) . . . . . . . . . . . . . . . 5, 6, 8

*Castorina v. Lykes Bros. S.S. Co.*,
578 F. Supp. 1153 (S.D. Tex. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Chandris, Inc. v. Latsis*,
515 U.S. 347 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6,10

*Chesapeake & Ohio Ry. Co. v. Schwalb*,
493 U.S. 40 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Clark v. American Marine & Salvage, LLC*,
No. 12-12849 (S.D. Ala. Jan. 3, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*The Daniel Ball*,
77 U.S. 557 (1871) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Dickerson v. Napolitano*,
604 F.3d 732 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Doninger v. Niehoff*,
642 F.3d 334 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Fisher v. Nichols*,
81 F.3d 319 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Fleischmann v. Director, OWCP*,
137 F.3d 131 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Goenaga v. March of Dimes Birth Defects Found*,
51 F.3d 14 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Goldberg & Connolly v. N.Y. Cmty. Bancorp, Inc.*,
565 F.3d 66 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Golden v. Rowan Companies, Inc.*,
778 F.2d 1022 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gravatt v. City of New York*,
226 F.3d 108 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*GTS Indus. S.A. v. S/S "Havtjeld"*,
68 F.3d 1531 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Gutierrez v. Waterman S. S. Corp.*,
373 U.S. 206 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Haney v. Miller's Launch, Inc.*,
773 F. Supp. 2d 280 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Harrington v. Atl. Sounding*,
No. 06-2900, 2013 U.S. Dist. LEXIS 2988 (E.D.N.Y. Jan. 7, 2013) . . . . . . . . . . . . . . . . . .7, 12

*Herb's Welding, Inc. v. Gray*,
470 U.S. 414 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hufnagel v. Omega Serv. Indus.*,
182 F.3d 340 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*McDermott Int'l Inc. v. Wilander*,
498 U.S. 337 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mitchell v. Trawler Racer, Inc.*,
362 U.S. 539 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Mudrick v. Cross Equip., Ltd.*,
250 Fed. Appx. 54 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Naquin v. Elevating Boats, L.L.C.*,
842 F. Supp. 2d 1008 (E.D. La. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nasser v. CSX Lines, LLC*,
191 F. Supp. 2d 307 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*O'Hara v. Weeks Marine*,
294 F.3d 55 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ocello v. City of New York*,
No. 05-3725, 2012 U.S. Dist. LEXIS 144841 (E.D.N.Y. Sept. 28, 2012) . . . . . . . . . . . . . . . . . . 4

*Oxley v. New York*,
923 F.2d 22 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pavel v. Plymouth Management Group, Inc.*,
198 Fed. Appx. 38 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*The Silvia*,
171 U.S. 462 (1898) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Smith v. American Mail Line, Ltd.*,
525 F.2d 1148 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sojak v. Hudson Waterways Corp.*,
590 F.2d 53 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Soler v. Maersk Line, Ltd.*,
No. 11-7666, 2012 U.S. Dist. LEXIS 54066 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . 3

*Teaver v. Seatrax of La.*,
434 Fed Appx. 307 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Tug Ocean Prince v. United States*,
584 F.2d 1151 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Usner v. Luckenbach Overseas Corp.*,
400 U.S. 494 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Uzdavines v. Weeks Marine, Inc.,*
418 F.3d 138 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*W. World Ins. Co. v. Stack Oil, Inc.,*
922 F.2d 118 (2d. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

**Federal Statutes**

33 U.S.C. § 902(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
33 U.S.C. § 903(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
33 U.S.C. § 905(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10
46 U.S.C. § 30104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

**Federal Rules**
Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## PRELIMINARY STATEMENT

Defendant, Northeast Remsco Construction, Inc. ("Northeast Remsco") respectfully submits this Memorandum of Law in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56(c).   As is fully set forth below, Northeast Remsco is entitled to summary judgment (1) dismissing Plaintiff's Complaint because he is not a Jones Act seaman and, alternatively, (2) dismissing the Complaint's Second Cause of Action with respect to the claim of unseaworthiness.

## STATEMENT OF FACTS

On October 7, 2010, Plaintiff Vincent Catanzaro ("Catanzaro") was employed as a laborer by Northeast Remsco. (Ex. B: Catanzaro Dep. at 43-44).   Catanzaro was hired on a seasonal basis. (Ex. C: Lamas Dep. at 68, 94).   Specifically, Catanzaro was working on an MTA bridge rehabilitation project in Jamaica Bay, near the Rockaways. (Ex. D: Lemanowicz Dep. at 13-14). Prior to beginning his employment with Northeast Remsco in 2008, Catanzaro had worked as a maintenance worker at a hotel, a stockbroker, a construction worker, an aluminum salesman, and as a repossession agent, but had never before worked on the water. (Ex. B: Catanzaro Dep. at 14-35, 32). Catanzaro has never held a Coast Guard license, maritime license, Merchant Marine credentials, seaman's papers, or a vessel operator license. (Ex. B: Catanzaro Dep. at 48).   Catanzaro joined the Laborer's Union Local 731 in 2003. (Ex. B: Catanzaro Dep. at 22).

A significant part of Catanzaro's job was to load construction materials from the land (at Ebb's Tide Marina) onto a transport barge. (Ex. B: Catanzaro Dep. at 52; Ex. H: Tolan Dep. at 39-40).   After the materials were loaded, Catanzaro and the crane operator and tug boat captain, Santiago Lamas, would transport the materials to the work site.  (Ex. B: Catanzaro Dep. at 57). Lamas operated the tug that pushed the transport barge to the work site. (Ex. B: Catanzaro Dep. at 58; Ex. N: Photograph of Transport Barge).  The job site consisted of barges that were spudded down

1

in the middle of Jamaica Bay.  (Ex. B: Catanzaro Dep. at 57; Ex. M: Photograph of Work Site).

Although Catanzaro occasionally performed the functions of a deckhand, he did not assist in the

operation or navigation of the vessels. (Ex. B: Catanzaro Dep. at 70, 80-81).  Upon arrival at the

worksite, Catanzaro would help unload the materials from the transport barge. (Ex. B: Catanzaro

Dep. at 63).  During the process of unloading materials from the transport barge onto the work site,

Lamas would operate the crane located on the work barge while Catanzaro would stand on the

transport barge and rig up the fork attachment.  (Ex. B: Catanzaro Dep. at 63).  Catanzaro spent

much more than 30 percent of his time aboard vessels during the course of his employment.  (Ex.

B: Catanzaro Dep. at 75).

On October 7, 2010, Catanzaro injured his knee while he was assisting in loading

materials from land onto the transport barge. (Ex. B: Catanzaro Dep. at 102; Ex. C: Lamas Dep. at

60-61). Catanzaro claims that the cargo, which consisted of bags of concrete stacked on a wooden

pallet, created a dangerous condition because the pallet was defective.  (Ex. B: Catanzaro Dep. at

104, 135;  Ex. C: Lamas Dep.at 12, 47).  Northeast Remsco's safety department had never received

any complaints regarding problems with the cargo. (Ex. G: Ratyniak Dep. at 49). After the incident,

Catanzaro and Lamas met with Jerome Lemanowicz, Northeast Remsco's project manager, to fill

out an accident report.  (Ex. D: Lemanowicz Dep. at 49).   Neither Catanzaro nor Lamas said

anything about the pallet being in poor condition or the pallet being the cause of the injury. (Ex. D:

Lemanowicz Dep. at 88).  Even prior to the incident, Lemanowicz never received any reports from

Catanzaro or Lamas regarding inferiority or insufficiency of the pallets in supporting the weight of

the concrete materials. (Ex. D: Lemanowicz Dep. at 43, 98).  William Tolan, a foreman on the

project, never received any complaints about the system of using forks and pallets to move materials

(Ex. H: Tolan Dep. at 29). Furthermore, Catanzaro never described to Tolan the condition of the pallet after the injury occurred. (Ex. H: Tolan Dep. at 74).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011). The court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). The movant's burden is met "if it can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Pavel v. Plymouth Management Group, Inc.*, 198 Fed. Appx. 38, 40 (2d Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Should the movant carry this burden, the non-movant "must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Goenaga v. March of Dimes Birth Defects Found*, 51 F.3d 14, 18 (2d Cir. 1995). The non-movant cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts . . . or defeat the motion through mere speculation or conjecture." *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d. Cir. 1990). Only disputes over material facts, i.e., "facts that might affect the outcome of the suit under the governing law," will properly preclude the entry of summary judgment. *Soler v. Maersk Line, Ltd.*, No. 11-7666, 2012 U.S. Dist. LEXIS 54066, at *3 (S.D.N.Y. April 17, 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (observing that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). A court's role "is not to resolve disputed issues of fact

3

but to assess whether there are any factual issues to be tried." *Ocello v. City of New York*, No. 05-3725, 2012 U.S. Dist. LEXIS 144841 at \*10 (E.D.N.Y. Sept. 28, 2012) (citing *Goldberg & Connolly v. N.Y. Cmty. Bancorp, Inc.*, 565 F.3d 66, 71 (2d Cir. 2009)).

## ARGUMENT

I.      **Catanzaro is Not a Jones Act Seaman and Therefore His Lawsuit Must Be Dismissed.**

    A.      **Catanzaro, a Member of the Laborer's Union, Did Not Derive His Livelihood From Sea-Based Activities.**

The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104.  The Supreme Court has held that the two essential requirements for seaman status are (1) that "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission,'" and (2) that the employee "must have a connection to a vessel in navigation. . . that is substantial in terms of both its duration and its nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995) (quoting *McDermott Int'l Inc. v. Wilander*, 498 U.S. 337, 355 (1991)).  The first prong of this two part test inquiry focuses on "the plaintiff's employment at the time of the injury." *Fisher v. Nichols*, 81 F.3d 319, 322 (2d Cir. 1996).  The employee "must be doing the ship's work." *Wilander*, 498 U.S. at 355.

The second prong of the the *Chandris* test is aimed at ascertaining "whether the plaintiff derives his livelihood from sea-based activities." *Fisher*, 81 F.3d at 322.  The purpose of this requirement is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based maritime workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose

them to the perils of the sea." *Chandris*, 515 U.S. at 368. The Jones Act does not protect workers with "only a transitory or sporadic connection to a vessel in navigation." *Id.* at 361.

The Supreme Court has adopted the rule of thumb that a "worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* at 371. Here, Northeast Remsco does not dispute that Catanzaro spent more than 30 percent of his time aboard vessels during the course and scope of his employment. However, this fact alone is not enough to qualify Catanzaro as a Jones Act seaman, for the second *Chandris* prong "requires a showing that the plaintiff's connection is substantial in both duration *and nature*." *Casser v. McAllister Towing & Transp. Co.*, No. 10-1554, 2010 U.S. Dist. LEXIS 130462, at *6 (S.D.N.Y. Dec. 6, 2010) (emphasis added). A worker "is not a Jones Act seaman as a matter of law just because [a party] made a showing that he spent more than thirty percent of his time working aboard a ... vessel." *Mudrick v. Cross Equip., Ltd.* 250 Fed. Appx. 54, 59-60 (5th Cir. 2007). "The duration of time aboard a vessel is not enough, standing alone, to determine status as a seaman under the Jones Act." *Boy Scouts of America v. Graham*, 86 F.3d 861, 866 (9th Cir. 1996).

In *Butcher v. Superior Offshore Int'l, Inc.*, 357 Fed. Appx. 619, 620 (5th Cir. 2009), the Fifth Circuit found that even though the worker spent 30 percent of his time aboard a vessel, less than 30 percent of that time was spent *actually working* aboard the vessel. "The fact that Plaintiff may have spent more than thirty percent of his working time aboard vessels, however, does not end the inquiry, as this alone is not sufficient to raise a triable factual issue regarding seaman status. As is often the case with respect to the questions of seaman status, the dispositive issue in this case is whether the *nature of Plaintiff's employment* demonstrates a substantial connection to the fleet of

Defendant's vessels." *Naquin v. Elevating Boats, L.L.C.*, 842 F. Supp. 2d 1008, 1017 (E.D. La. 2012) (emphasis added). Similarly, in *Casser* the court observed:

> [E]ven if the plaintiff satisfied the temporal component of the second Chandris prong, the plaintiff fails to satisfy the functional component, because the plaintiff's connection to vessels is not substantial in nature.... At oral argument plaintiff's counsel argued that once a person steps onto a vessel, he is subject to the perils of the sea. However, if this argument were accepted, then there would be no distinction between a longshoreman and a seaman—a conclusion that cannot stand in light of the two separate and mutually exclusive compensation schemes Congress established for longshoremen and seamen.

*Casser*, 2010 U.S. Dist. LEXIS 130462, at *7-8.

In the instant case, when Catanzaro was not loading and unloading the barges, he was, for much of the time, a passenger aboard the transport barge that transported him to and from the work site where he was tasked with the job of loading and unloading barges. Although Catanzaro may have done some occasional work of a deckhand, his primary employment functions were to assist in loading and unloading materials onto and from the barges. The court in *Teaver v. Seatrax of La.*, 434 Fed Appx. 307 (5th Cir. 2011), found that an employee could not demonstrate seaman status under the Jones Act because the vessel provided transportation and lodging services for the employees and their equipment, and they were merely passengers on the vessel. The court reiterated its pronouncement in *Hufnagel v. Omega Serv. Indus.*, 182 F.3d 340, 347 (5th Cir. 1999) that "workers aboard vessels that transport them to their work stations on offshore drilling platforms are not seaman, even when the transportation vessel also serves as a "floating hotel" during the work assignment." *Teaver*, 434 Fed Appx. at 310. Although the plaintiff in *Teaver* "stored equipment, attended meetings, slept, and ate aboard the vessel, his contemplated work assignment was almost

6

entirely on the platform." *Id.* at 311. In *Hufnagel*, the court held that the fact that the plaintiff ate, slept, and spent time on the vessel did not make him a crew member. 182 F.3d at 347 (citing *Golden v. Rowan Companies, Inc.*, 778 F.2d 1022, 1025 (5th Cir. 1985)). Here, the fact that Catanzaro never even slept on a vessel is even more compelling than the facts in *Teaver* in which the transport vessel was essentially a "floating hotel." Similarly, in *Butcher* the Fifth Circuit found that although the worker performed some tasks on board the vessel, these were incidental and minor in nature. 357 Fed. Appx. at 619.

Courts also look to factors that include the employee's background, training, and whether he slept aboard the vessel as part of the determination into seaman status. Catanzaro, who was a member of the Laborer's Union, held no maritime license or seaman's papers, never operated or navigated a vessel, and never slept on any vessel, rather returning to his home after the end of each workday. In *O'Hara v. Weeks Marine*, 294 F.3d 55 (2d Cir. 2002), the Second Circuit, in finding that the plaintiff failed to meet Jones Act seaman status, cited, among other factors, that the plaintiff held no seaman's papers, never spent the night aboard the barge, and never operated the barge or assisted in its navigation. *Id.* at 64; *see also Harrington v. Atlantic Sounding*, No. 06-2900, 2013 U.S. Dist. LEXIS 2988 (E.D.N.Y. Jan. 7, 2013) (finding that the worker was a seaman under the Jones Act while noting that the plaintiff had taken several maritime-related vocational courses, had served as a hull technician in the United States Navy, held several additional civilian maritime positions, and held a Merchant Marine license, which required passing an extended series of tests); *Clark v. American Marine & Salvage, LLC*, No. 12-12849 (S.D. Ala. May 1, 2012) (holding that plaintiff was not a Jones Act seaman as most of his work was not seafaring in nature - he never slept aboard the barge, went home every night and drove to and from his home to job sites), *aff'd*, No. 12-

12849 (11th Cir. October 23, 2012) (per curiam); *Casser v. McAllister Towing & Transp. Co.,* No. 10-1554, 2010 U.S. Dist. LEXIS 130462 (S.D.N.Y. Dec. 6, 2010) (holding plaintiff port engineer had no substantial connection to vessel, noting he returned home every night after work and did not sleep or eat on vessels).

   **B.    Catanzaro Meets the Situs and Status Test of the LHWCA and is Therefore
            Covered Under the Exclusive Remedy of the LHWCA, as the Jones Act and the
            LHWCA are Mutually Exclusive Compensation Remedies.**

            **i. Catanzaro is a Covered Employee Under the LHWCA.**

The LHWCA is a comprehensive no-fault worker's compensation remedy which requires employers to provide benefits to their covered maritime workers injured in the course of their employment. *Gravatt v. City of New York*, 226 F.3d 108, 115 (2d Cir. 2000). To be covered under the LHWCA, a claimant must satisfy both "status" and "situs" requirements: (1) the worker must be engaged in maritime employment as defined by § 902(3) of the LHWCA; and (2) the injury must have occurred on navigable waters or one of the areas enumerated in § 903(a) of the LHWCA. 33 U.S.C. §§ 902(3), 903(a); *Fleischmann v. Director, OWCP*, 137 F.3d 131, 135 (2d Cir. 1998).

Under the LHWCA's status requirement, "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor worker including a ship repairman, shipbuilder, and ship-breaker" is covered by the LHWCA. 33 U.S.C. § 902(3). The purpose of the LHWCA is to cover those workers who are "involved in the essential elements of loading and unloading...." *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 423 (1985). Generally, LHWCA status is satisfied when an employee is engaged in work that is integral to the loading or unloading of vessels. *Chesapeake & Ohio Ry. Co. v. Schwalb*, 493 U.S. 40 (1989). Here, Catanzaro's primary job duties consisted of loading and unloading vessels,

traditional longshoring activities. Thus, Catanzaro satisfies the LHWCA's status requirement because he is an employee as defined by § 902(3) of the LHWCA.

Under the LHWCA's situs requirement, the employee's injury must occur "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a). Here, Catanzaro was injured while on a barge on the navigable waters of Jamaica Bay. (Ex. B: Catanzaro Dep. at 54, 102; Ex. C.: Lamas Dep. at 60-61). "[W]aterways are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce." *The Daniel Ball*, 77 U.S. 557, 563 (1871). Therefore, Catanzaro meets the LHWCA's situs requirement.

In short, Catanzaro's injury is covered under the LHWCA because he meets the LHWCA's status and situs requirements.

### ii.    The LHWCA is Catanzaro's Exclusive Remedy.

The LHWCA and the Jones Act are mutually exclusive statutes for injured maritime workers. The Jones Act provides for "an action for damages at law" for "any seaman who[,] . . . in the course of his employment," sustains a personal injury. 46 U.S.C. § 30104. By contrast, the LHWCA provides a remedy for injuries sustained by land-based maritime workers and expressly excludes "a master or member of a crew of any vessel," i.e., any seaman, from coverage. *See Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 143 (2d Cir. 2005); 33 U.S.C. § 902(3)(G), 905(a). Accordingly, if a person is a "seaman" for the purposes of the Jones Act, he is excluded from coverage under the LHWCA, and cases interpreting the scope of the term "seaman" under the Jones

9

Act necessarily interpret the scope of the LHWCA's exclusion of a "master or member of a crew of

any vessel." *Uzdavines*, 418 F.3d at 143 (2d Cir. 2005) (citing *Chandris*, 515 U.S. at 355-56).

Catanzaro has received compensation and medical benefits under the LHWCA

relative to his October 7, 2010 injury. (Ex. E: Answer at 8, ¶ 2; Ex. F: Form LS-208). Like most

workers' compensation statutes, the LHWCA bars injured employees from suing their employers in

tort. 33 U.S.C. § 905(a). A narrow exception to this immunity exists when the employer is also a

vessel owner (a so-called "dual capacity employer") and is being sued in its vessel owner capacity.

In such a case and unless otherwise prohibited elsewhere in the statute, an injured employee is

permitted to sue the employer for vessel negligence under § 905(b) of the LHWCA. *Jones &*

*Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 530-32 (1983); *Gravatt*, 226 F.2d at 119-120 (2d Cir.

2000). In *Gravatt*, the Second Circuit made clear that actions against employers who happen to own

vessels are strictly limited, recognizing that to broadly permit such lawsuits would render

meaningless the immunity from suit that § 905(a) of the LHWCA affords. The Second Circuit held

as follows:

> Liability in vessel negligence under section 905(b) will only lie where
> the dual-capacity defendant breached its duties of care while acting
> in its capacity as vessel owner. The negligent actions of a dual-
> capacity defendant's employees must be analyzed to determine
> whether they were undertaken in pursuance of the defendant's role as
> vessel owner or as employer. The negligence of the employer's
> agents, acting in tasks constituting harbor-work employment, may not
> be imputed to their employer in its capacity as vessel owner.
> Congress' intention is best carried out through analysis of the dual-
> capacity defendant's allegedly negligent conduct to determine
> whether it constituted negligence of the defendant in it role as vessel
> owner, rather than within the scope of harbor-working activities. If
> the negligent conduct occurred in the course of activity within the
> scope of the covered harbor work - such that if a contractor
> independent of the vessel were performing the work, its liability

> would have been limited under section 905(a) to statutory
> compensation benefits - then liability should not lie against the vessel
> under section 905(b) simply because the defendant was both the
> employer and vessel owner.

*Id.* at 124-25.

The Second Circuit emphasized that "the court's task is to analyze the allegedly negligent conduct to determine whether the conduct was performed in the course of the operation of the owner's vessel as a vessel or whether the conduct was performed in furtherance of the employer's harbor-working operations." *Id.* at 125.

There is absolutely no evidence that Northeast Remsco was negligent in its capacity of vessel owner. Therefore, to the extent that Catanzaro is found not be a Jones Act seaman, the entire lawsuit, including the Third Cause of Action, through which Catanzaro asserts a claim against Northeast Remsco in its capacity as vessel owner under 33 U.S.C. § 905(b), must be dismissed.

**II.     To The Extent That the Pallet Was Damaged, The Damaged Pallet Did Not Render the Vessel Unseaworthy.**

Under the doctrine of unseaworthiness, an owner has an absolute duty to furnish a ship, crew, and appurtenances reasonably fit for their intended service. *Mitchell v. Trawler Racer, Inc.*, 36 U.S. 539, 549 (1960); *Sojak v. Hudson Waterways Corp.*, 590 F.2d 53, 54 (2d Cir. 1978); *Oxley v. New York*, 923 F.2d 22, 24 (2d Cir. 1991). The general rule is that the vessel must be "staunch, strong, well equipped for the intended voyage and manned by a competent and skillful master of sound judgment and discretion." *Tug Ocean Prince v. United States*, 584 F.2d 1151, 1155 (2d Cir. 1978). A vessel is seaworthy when it "is reasonably fit to carry the cargo which she has undertaken to transport." *The Silvia*, 171 U.S. 462, 464 (1898). "[S]eaworthiness is defined as the ability of a vessel adequately to perform the particular services required of her on the voyage she

11

undertakes." *Harrington*, 2013 U.S. Dist. LEXIS 2988, at *4 (citing *GTS Indus. S.A. v. S/S "Havtjeld"*, 68 F.3d 1531, 1535 (2d Cir. 1995)).

This duty is absolute, but it does not require a perfect or an accident-free vessel. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960). "The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." *Id. See Nasser v. CSX Lines, LLC*, 191 F. Supp. 2d 307, 314-315 (E.D.N.Y. 2002); *Haney v. Miller's Launch, Inc.*, 773 F. Supp. 2d 280, 288 (E.D.N.Y. 2010).

Here, Catanzaro claims that a damaged pallet caused his injury:

Q: We talked about the pallet. You believe the condition of the pallet was the cause of your injury?
A: Yes.
Q: Were there any other conditions that you believe were the cause of your injury?
A: The deck on the barge, did you see the mess on that?
Q: What --
A: That probably also could cause tripping hazards.
Q: Did it cause a tripping hazard in relation to your injury, though?
A: No. The broken pallet caused the condition.

(Ex. B: Catanzaro Dep. at 135).

Northeast Remsco denies that the pallet was damaged or otherwise caused Catanzaro's injury. To the extent, however, that the pallet was damaged and did cause his injury, the damaged pallet did not render the transport barge unseaworthy.

The scope of unseaworthiness is not limited to a physical part of the vessel. Rather, a vessel's condition of unseaworthiness might arise from circumstances including defective gear, appurtenances in disrepair, insufficient number of men assigned to perform a task, an unfit crew, the

12

method of loading cargo, and the manner of its stowage. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971). The scope of unseaworthiness does not extend, however, to defective cargo. "The doctrine applies to conditions created by improper loading or stowage, *but not to defective cargo itself.*" *Barlas v. United States*, 279 F. Supp. 2d 201, 210 (S.D.N.Y. 2003) (emphasis added) (citing *Gutierrez v. Waterman S. S. Corp.*, 373 U.S. 206 (1963)); *see also Smith v. American Mail Line, Ltd.*, 525 F.2d 1148 (9th Cir. 1975) (finding that warranty of seaworthiness does not apply to soft drink sleeve). "Since cargo has never been considered an integral part of a vessel, an inherent vice, defect, or the dangerous nature of cargo will not render a vessel unseaworthy." *Castorina v. Lykes Bros. S.S. Co.*, 578 F. Supp. 1153, 1161 (S.D. Tex. 1984) (citing *Bell v. Nihonkai Kisen K.K. Tokyo*, 204 F. Supp. 230, 233 (D.C. Or. 1962)) (refusing to extend the warranty of unseaworthiness to a latently defective log that struck and injured plaintiff).

In *Carabellese v. Naviera Aznar, S.A.*, 285 F.2d 355 (2d Cir. 1960), the plaintiff was injured during the loading of a vessel by the fall of a wooden crate containing electrical control centers manufactured by Westinghouse Electric Corporation and packaged by Westinghouse Electric International Co. *Id.* at 356. The accident was attributed in part to the top-heavy character of the crate. *Id.* The Second Circuit observed that although there was case law that may have imposed liability based on unseaworthiness if the crate, once loaded, had been improperly stowed and had injured the plaintiff during a later operation, it knew "of no case that imposed absolute liability on the owner where the alleged danger was inherent in the cargo and this was still in the course of being loaded." *Id.* at 360. Similarly, the court in *Bell* distinguished between injuries occurring when loading and occurring when unloading a vessel. Where, for example, a crate already has been stowed by the vessel and the crate later causes an injury, liability for unseaworthiness might be

13

imposed because the vessel retained exclusive possession and control of the cargo for a period of time. 204 F. Supp at 232. When the injury occurs while the cargo is being loaded, though, the doctrine of unseaworthiness does not apply:

> Thus, underlying all of the extensions and variations of the doctrine is the basic concept that it relates to the ship and to those things appertaining and belonging to the ship. Cargo in and of itself has never been considered an integral part of the ship. From ancient times they have been regarded as separate interests. The cases which hold that there is liability on the part of the ship where cargo has been involved deal not with the inherent safety of the cargo but rather with the manner in which it has been stowed or thereafter utilized by or on behalf of the ship. In short, if cargo has been stowed or thereafter utilized in such a manner as to imperil the safety of the seamen, the warranty comes into full bloom.

204 F. Supp. at 233.

In the instant case, the pallet that Catanzaro alleges caused his injury was part of the cargo that Catanzaro helped load onto the barge. This pallet, which was supplied by Sika Corporation or Triboro Hardware, was pre-loaded with sacks of concrete by the supplier, was delivered directly to Ebb-Tide Marina by the supplier and was part of the cargo purchase itself (Ex. D: Lemanowicz Dep. at 87-88). Because the pallet was part of the cargo being loaded, and because the injury occurred during the loading process and not at some later time after the cargo had been stowed, the doctrine of unseaworthiness is inapplicable.

14

## CONCLUSION

For all of the reasons set forth above, Northeast Remsco respectfully requests that this Court grant Northeast Remsco's motion for summary judgment pursuant to Fed. R. Civ. P. 56(c) seeking (1) the dismissal of Catanzaro's Complaint because he is not a Jones Act seaman and, alternatively, (2) dismissing the Complaint's Second Cause of Action with respect to the claim of unseaworthiness.

Dated: February 22, 2013

FLICKER, GARELICK & ASSOCIATES, LLP
Attorneys for Defendant

By: _____

Robert N. Dengler
Matthew L. Kislak
45 Broadway
New York, New York 10006
(212) 319-5240

15