UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
VINCENT CATANZARO,

                Plaintiff                      **MEMORANDUM AND ORDER**

      - against -                                 11-CV-4903 (RRM) (VVP)

NORTHEAST REMSCO CONSTRUCTION,
INC.,

                Defendant.
-----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge

      Plaintiff Vincent Catanzaro brings this action against defendant Northeast Remsco Construction, Inc. ("Northeast Remsco"), alleging negligence under the Jones Act, 46 U.S.C. §§ 30104 *et seq*, negligence under the Longshore and Harbor Worker's Compensation Act, 33 U.S.C. §§ 905(b) & 933, unseaworthiness, and maintenance and cure. (*See* Compl. (Doc. No. 1).) Presently before the Court are Catanzaro and Northeast Remsco's cross motions for partial summary judgment on Catanzaro's status as a "seaman" and on his unseaworthiness claim. (*See* Doc. Nos. 20, 21.) For the reasons that follow, both motions are denied.

## BACKGROUND

      Northeast Remsco contracted with the Metropolitan Transportation Authority ("MTA") to strengthen and perform repairs to the trestle and bridge system that allows the subway to travel over Jamaica Bay to Far Rockaway, Queens. The project consisted of repairs to the beams underneath the bridges, removal of old, soft patches of concrete, installation of reinforcing steel bars, and application of new concrete. The project began in March 2009 and was estimated to be

1

completed sometime in 2011.  Catanzaro was hired by Northeast Remsco in March 2009 to work on the MTA project.[1]

Catanzaro was assigned to work with Santiago Lamas[2] and was tasked with transporting construction materials to the work areas for use in the project as well as carrying debris away from the work areas for disposal.  The materials – which included plywood, reinforcing steel bars, and water, but consisted mostly of concrete sacks weighing approximately 2500 pounds – were packaged on wooden pallets and delivered to Ebb-Tide Marina by the supplier.  Once there, the materials were loaded onto a materials transport barge by crane.  Lamas operated the crane, which had a fork attachment that fit into the wooden pallets.  Catanzaro would slide the crane's fork attachment into the pallet and Lamas would use the crane to lift the materials onto the transport barge.  Once the materials were on the transport barge, Catanzaro would remove the fork attachment from the pallet.

After all the materials were loaded onto the barge, Lamas and Catanzaro would secure the barge to a tug boat.  Lamas would operate the tug boat, and together they would transport the materials to the worksite, which consisted of several barges spudded down near the bridges.  Upon arriving at the worksite, Catanzaro and Lamas would unload the barge using the same process; Catanzaro would slide the crane's fork attachment into the pallets and Lamas would use the crane to remove the materials from the barge and place them onto other barges present at the worksite.  Catanzaro and Lamas would then load debris from the worksite onto the barge and

---

[1] Prior to beginning his employment at Northeast Remsco, Catanzaro held various odd jobs from 1998 through 2003. In 2003, he joined the Laborer's union and worked various construction jobs through the union until 2009.  (Doc No 27-8, ¶ 3.)

[2] Lamas was an Operating Engineer, crane operator, and tug boat captain.  Lamas was also married to Catanzaro's mother from 1985–1995, and lived in the basement of Catanzaro's home for eight years from 2001 to 2009.

return to Ebb-Tide Marina. Catanzaro spent at least five to six hours each day on the tug boat and barge during these material delivery trips.

In addition to his loading duties, Catanzaro would secure the barge to the pier before the loading process began and would untie the barge from the pier and secure it to the tug after loading was completed. Once at the worksite, he would secure the transport barge to the other barges at the worksite. Catanzaro would also assist Lamas in using the tug boat to move around the other barges at the worksite, a process that took approximately three hours each day. Furthermore, in a certification prepared after Northeast Remsco served their motion for summary judgment, Catanzaro also claims that he routinely acted as a lookout once the barge and tug were moving between the worksite and the pier and advised Lamas of hazards to the boat's navigation. Catanzaro further claims that he would give Lamas navigational directions on certain days when Lamas's field of view was obstructed by certain cargo.

On October 7, 2010, while attempting to remove the crane's fork attachment from a pallet following the loading of a sack of concrete onto the transport barge, Catanzaro was injured. According to Catanzaro, the pallets used with the materials were often weak and in poor condition, and would frequently crack under the weight of the concrete. Catanzaro states that on several occasions he complained about the state of the pallets to Lamas and to the general foreman, Bill Tolan, but that the problem was never addressed. On the day of his injury, Catanzaro claims that the pallet was collapsing under the weight of the concrete, which in turn made it difficult to remove the fork. As he was straining to remove the fork, his right knee suddenly buckled.

Northeast Remsco disputes this account. According to Northeast Remsco, the pallets used in the project were fully capable of supporting the weight of the concrete sacks and suitable

3

for use during the project.  Northeast Remsco contends that neither its safety department nor the project superintendant, Jerome Lemanowicz, ever received any complaints regarding the pallets, and that Tolan never told Lemanowicz that the pallets needed to be replaced or posed a risk of injury.  Furthermore, Northeast Remsco claims that Catanzaro told neither Lemanowicz nor Tolan that a defective pallet was the cause of his injury immediately following the incident.  Northeast Remsco argues instead that effort was required to remove the forks from the pallets regardless of the condition of the pallets simply because of the movement of the barges on the water.

On April 5, 2013, both parties moved for summary judgment on the issue of Catanzaro's status as a seaman and on Catanzaro's unseaworthiness claim.  (*See* Doc. Nos. 20, 21.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the nonmoving party.  *See id*. at 249 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998).  The court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d

4

845, 854 (2d Cir. 1996)). Any evidence in the record of any material fact from which an inference could be drawn in favor of the non-moving party precludes summary judgment. *See Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, then "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). However, there must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id*. at 586. Instead, the non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Id*. at 248; *see also Matsushita*, 475 U.S. at 586.

## DISCUSSION

### A. Status as a "Seaman"

The Jones Act provides a cause of action sounding in negligence to a "seaman" who is "injured in the course of employment." *See* 46 U.S.C. § 30104. To qualify as a "seaman" under the Jones Act, an employee must demonstrate (1) that his duties "contribut[e] to the function of the vessel or to the accomplishment of its mission" and (2) that he has "a connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). The "fundamental purpose" of the second prong of the *Chandris* test is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Fisher v. Nichols*, 81 F.3d 319, 322 (2d Cir. 1996) (quoting *Chandris*, 515

U.S. at 368).  While summary judgment may be appropriate where "the facts and the law will reasonably support only one conclusion," the seaman inquiry "is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury."  *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997).

This is such a case.  The key dispute between the parties here centers on the second prong of the *Chandris* test – specifically, whether Catanzaro's connection to the vessel was substantial in nature.[3]  Northeast Remsco contends that although Catanzaro did occasionally perform the work of a deckhand, Catanzaro's primary job was to load and unload materials.  Northeast Remsco points to the fact that Catanzaro was a member of a laborer's union, that he never worked as a seaman or held maritime or seaman's papers, and that he returned to his home nightly and never slept on the vessel.  Thus, Northeast Remsco argues, Catanzaro is properly characterized as a laborer and a passenger, not a seaman.  Catanzaro counters by claiming that his work on the barge and tug involved not only the loading and unloading of materials, but also handling lines, acting as a lookout, and even providing navigational directions to Lamas on days when Lamas' view was obstructed.[4]  Thus, Catanzaro argues, his connection to the vessel was substantial in nature and he is a seaman as a matter of law.

---

[3] For the purposes of this motion, it appears that Northeast Remsco concedes that Catanzaro worked on a vessel in navigation and contributed to the work of that vessel.  Furthermore, Northeast Remsco also concedes that Catanzaro spent more than 30% of his time on vessels in navigation during the course of his employment.  *See Casser v. McAllister Towing and Transp. Co., Inc.*, No. 10-cv-1554, 2010 WL 5065424, at *3 (S.D.N.Y. Dec. 7, 2010) ("In order to satisfy the temporal component [of the *Chandris* test], the general rule of thumb is that the plaintiff must spend at least 30% of his time working on a vessel that is in navigation.").

[4] Although it is curious that Catanzaro first mentioned these additional duties in a certification prepared specifically to defeat Northeast Remsco's motion for summary judgment, Catanzaro's certification is properly considered here because it is only arguably inconsistent with Catanzaro's prior deposition testimony.  *See Hayes v. N.Y.C. Dep't of Correcs.*, 84 F.3d 614, 620 (2d Cir. 1996) (finding that district court erred in disregarding portion of plaintiff's second deposition because the two depositions were "only arguably contradictory" and that the court could not "conclude that the two depositions are contradictory without drawing an improper inference as to [plaintiff's] credibility."); *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (finding that district court improperly disregarded factual allegation made in an affidavit even though the allegation was not raised in deposition testimony because an "affidavit may create a genuine issue of material fact" when the assertions "rather

Based on the evidence in the record, the Court cannot resolve this question at this stage. Rather, the answer to this contested factual issue turns heavily on the relative weight accorded to certain evidence and the evaluation of the credibility of the parties' competing claims. In other words, the Court cannot conclude that the facts reasonably support one conclusion on this issue, and a material issue of fact for the jury exists on the issue of Catanzaro's status as a seaman. Accordingly, Catanzaro and Northeast Remsco's cross-motions for summary judgment on Catanzaro's status as a seaman are denied.[5]

**B. Unseaworthiness**

"Under the principles of seaworthiness, an owner has an absolute duty to furnish a ship, crew, and appurtenances reasonably fit for their intended service." *Oxley v. City of New York*, 923 F.2d 22, 24 (2d Cir. 1991) (citing *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960)). "An owner's failure to provide a ship, crew, and appurtenances reasonably fit for their intended service results in a species of liability without fault, and such liability does not depend either on negligence . . . or on notice." *Id.* at 25 (quotations and citations omitted). However, the owner of a vessel is not "obligated to furnish an accident-free ship. . . . The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." *Mitchell*, 362 U.S. at 550.

Northeast Remsco argues that it is entitled to summary judgment on Catanzaro's unseaworthiness claim because, as the allegedly defective pallet was part of the cargo and the injury occurred during the loading process, the warranty of seaworthiness does not apply. This is

---

than contradicting, explain or amplify prior deposition testimony."); *see also Zaccaro v. Shah*, 746 F. Supp. 2d 508, 521 (S.D.N.Y. 2010); *Morse v. Pratt & Whitney*, No. 10-cv-1126, 2013 WL 255788, at *7 (D. Conn. Jan. 23, 2013). It is for the jury to evaluate Catanzaro's credibility and determine the weight to assign to these allegations.
[5] Recent letters filed by the parties discussing additional case law do not change this result. *See* Doc. Nos. 33 – 35.

7

mistaken. The scope of the warranty of seaworthiness is not limited to the physical part of a ship. Rather, "[a] vessel's condition of unseaworthiness might arise from any number of circumstances," including, but not limited to, "[t]he method of loading [the vessel's] cargo, or the manner of its stowage." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971); *see also Gutierrez v. Waterman*, 373 U.S. 206, 213 (1963) ("Seaworthiness is not limited, of course, to fitness for travel on the high seas; it includes fitness for loading and unloading."). So while, as a general matter, the doctrine of seaworthiness does not apply to cargo, *see, e.g.*, *Morales v. City of Galveston*, 370 U.S. 165, 170 (1962), when the method of loading that cargo involves using the cargo container as an instrument for cargo handling, the warranty of seaworthiness applies, *see Massa v. C.A. Venezuelan Navigacion*, 298 F.2d 239, 240 (2d Cir. 1962) (reversing district court's dismissal of unseaworthiness claim where plaintiff claimed that the apertures in pallets used for loading cargo were defective and plaintiff was injured when pallet loaded with cargo fell from ship's winch); *Noble v. Lehigh Val. R. Co.*, 388 F.2d 532 (2d Cir. 1968) (reversing judgment for defendant on plaintiff's seaworthiness claim where plaintiff was struck by piece of wood while loading cargo since the court should "have charged that [defendant] would be liable if the container was not reasonably fit for its purpose – whether the piece of wood was part of the lifting mechanism or served only to protect the cargo."); *Avena v. Clauss & Co.*, 504 F.2d 469 (2d Cir. 1974) (reversing dismissal of unseaworthiness claim where band securing cargo, which plaintiff used to move the cargo, broke and injured plaintiff). Here, the sacks of concrete came prepackaged on pallets, the sole purpose of which was to enable the concrete to be loaded and unloaded from the barge. Catanzaro's job was to insert the crane's fork into those pallets so that the concrete could be loaded onto the barge, transported, and unloaded. As this was the method chosen to load and unload the materials from the vessel, the

warranty of seaworthiness applied to the pallets and Northeast Remsco may be held liable if the pallets were not reasonably fit for their intended service

That being said, the Court cannot conclude as a matter of law that the vessel was unseaworthy, as Catanzaro urges. "[T]he concept of the unseaworthiness of a ship is a relative one, dependent for definition in each instance upon the circumstances in which her fitness is drawn into question." *Mosley v. Cia. Mar. Adra, S.A.*, 314 F.2d 223, 227 (2d Cir. 1963). Although Catanzaro argues that the pallet buckled under the weight of the concrete sacks, leading him to expend extraordinary effort to remove the crane's forks and causing his injuries, Northeast Remsco contends that the pallets were sound and were suitable for their intended use. Evidence in the record supports both positions and, therefore, the ultimate resolution of this issue depends heavily on the credibility of not only Catanzaro but also Lamas, Tolan, Lemanowicz, and others. Thus, the Court finds that whether the pallets used here were actually reasonably suitable for their intended use is a question of fact for the jury. Accordingly, both Catanzaro and Northeast Remsco's cross motions for summary judgment on the issue of unseaworthiness are denied.

## CONCLUSION

For the reasons set forth above, Catanzaro's and Northeast Remsco's cross motions for summary judgment are denied. This matter is re-committed to Magistrate Judge Pohorelsky for supervision of all remaining pretrial matters, including the preparation of a joint pretrial order, and settlement discussions as appropriate.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
      March 26, 2014

_____
ROSLYNN R. MAUSKOPF
United States District Judge